UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CECILIA D. VAZQUEZ and ELLIOT R. DUPREY

Plaintiffs,

-against-

SELENE FINANCE LP AND DLJ MORTGAGE CAPITAL INC.

Defendants.

**MEMORANDUM AND ORDER**
24-cv-01946 (LDH) (LKE)

---

LaSHANN DeARCY HALL, United States District Judge:

Cecilia Vazquez and Elliot Duprey ("Plaintiffs") bring the instant action against Selene Finance LP ("Selene") and DLJ Mortgage Capital, Inc. ("DLJ") (collectively, "Defendants") under the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681, *et seq.*; and New York General Business Law ("GBL") § 349.[1]  (Compl. ¶¶ 120–59.)  Defendant DLJ moves, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' claims against it.  (Def. DLJ's Mot. Dismiss ("DLJ's Mot."), ECF No. 15.)

## BACKGROUND[2]

Plaintiffs own a home located at 93-32 204th Street, Hollis, NY 11523.  (Compl. ¶ 10.) The home is encumbered by two mortgages, which were initially consolidated under

---

[1] Plaintiffs also bring additional claims against Defendant Selene only.  (Compl. ¶¶ 60-119, ECF No. 1.)  However, because Defendant Selene voluntarily withdrew its participation in the instant motion, (Def. DLJ's Reply Mem. L. Supp. Mot. Dismiss ("DLJ's Reply") at 1, ECF No. 26), the Court need not address those claims here.

[2] The following facts are taken from Plaintiffs' complaint as well as the exhibits attached thereto.  Where the allegations in the complaint conflict with what is represented in the attached exhibits, the exhibit "controls and the court need not accept as true the allegations of the complaint."  *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 176 n. 7 (E.D.N.Y. 2015) (quoting *Barnum v. Millbrook Care Ltd. P'ship*, 850 F.Supp. 1227, 1232–33 (S.D.N.Y.1994), *aff'd*, 43 F.3d 1458 (2d Cir.1994)).
.

CitiMortgage (the "Consolidated Mortgage"). (*See Id.* ¶¶ 15-16.) The Consolidated Mortgage was assigned to Federal National Mortgage Association on February 19, 2014, and later assigned to VRMTG Asset Trust on April 24, 2019. (*Id.* ¶¶ 18-19.) A loan modification agreement, dated January 15, 2020, lists Plaintiffs as "borrowers" on the Consolidated Mortgage, U.S. Bank Trust National Association ("U.S. Bank") as their "lender," and Defendant Selene as "attorney-in-fact." (*Id.* ¶ 20.) On March 19, 2021, the Consolidated Mortgage was assigned from VRMTG Asset Trust to Defendant DLJ. (*Id.* ¶ 22.)

In or about August 2022, Plaintiffs applied for a loan modification from Defendant Selene. (*Id.* ¶ 24.) Initially, the request for modification was denied, and Defendant DLJ commenced foreclosure proceedings in Queens County Supreme Court. (*Id.*) In March 2023, Defendant Selene sent Plaintiffs two letters over the course of two days: a March 22 letter stating Plaintiffs were approved for a "conventional" "standard modification"; and a March 23 letter offering a "trial modification plan" (the "Trial Modification Plan"). (*Id.* ¶¶ 26-28). Plaintiffs signed and returned both agreements by the deadlines listed in each letter. (*Id.* ¶¶ 25, 28.) Although the March 22 letter indicated Plaintiffs were already approved for a "conventional" "standard modification," the March 23 letter "stated that Plaintiffs were required to make trial payments and comply with all terms" of the Trial Modification Plan to be considered for a permanent modification or other assistance. (*Id.* ¶ 27.) Specifically, the Trial Modification Plan required Plaintiffs to submit three consecutive monthly payments due on May 1, June 1, and July 1, 2023. (*Id.* ¶ 26; *see also* Compl., Ex. N at 5, ECF No. 1-18.) It also indicated that, if Plaintiffs made the requisite payments on May 1, June 1, and July 1, 2023, Defendant Selene would offer a permanent modification whereby a payment would be due August 1, 2023, in the amount of $2,149.70. (Compl., Ex. N at 6.)

2

Pursuant to the Trial Modification Plan, Plaintiffs submitted their May 1, 2023, payment and pre-authorized two ACH debits for June 1, 2023, and July 1, 2023. (*See id.* ¶¶ 28–29, 30.) On June 2, 2023, Defendant Selene initiated an ACH debit from Plaintiffs' bank account in satisfaction of the June 2023 payment due under the Trial Modification Plan. (*Id.* ¶ 31.) Then, on June 6, 2023, Defendant Selene initiated an unauthorized ACH debit, resulting in Plaintiffs' account being overdrawn. (*Id.* ¶ 32.) Ultimately, the debit was reversed by the bank due to insufficient funds. (*Id.*) However, and notwithstanding the bank's reversal, Defendant Selene issued an ACH credit to Plaintiffs' account, which it subsequently reversed on June 15, 2023. (*Id.* ¶ 33.) These transactions caused Plaintiffs' account to be significantly overdrawn, thereby causing the bank to lower Plaintiffs' credit limit. (*Id.* ¶ 35.) On July 5, 2023, Defendant Selene initiated an ACH debit from Plaintiffs' bank account in satisfaction of the July 2023 payment due under the Trial Modification Plan. (*Id.* ¶ 36.)

On or about July 12, 2023, Defendant Selene sent Plaintiffs modification document packages (the "Modification Documents") reflecting proposed terms for the permanent modification of Plaintiffs' mortgage. (*Id.* ¶ 37; Compl., Ex. S, ECF No. 1-23.) To accept the proposed terms, the Modification Documents required Plaintiffs to return certain executed documents to Defendant Selene by July 27, 2023. (*Id.* ¶ 37-39.) However, Plaintiffs did not receive the Modification Documents until July 26, 2023—the day before they were required to be returned fully executed and notarized. (*Id.* ¶ 37-38 (indicating Defendant Selene mailed the Modification Documents to Plaintiffs' former attorney on or about July 12, 2023).) As a result, to meet the deadline, Plaintiffs were required to take unplanned time off work. (*Id.* ¶ 39.) Ultimately, the Modification Documents were executed and recorded, reflecting Plaintiffs as

"borrowers," DLJ as the "lender," and Defendant Selene Finance as "attorney-in-fact." (*Id.* ¶ 23.)

Pursuant to the Modification Documents governing Plaintiffs' modified mortgage, Plaintiffs authorized ACH debits starting on September 1, 2023. (*Id.* ¶ 41.) However, Defendant Selene initiated an ACH debit on August 9, 2023. (*Id.* ¶ 42.) Upon learning of this withdrawal, Plaintiffs requested a stop payment from their bank and a transaction reversal, resulting in the cancellation of the automatic ACH payments. (*Id.* ¶¶ 43–44.) Plaintiffs then manually made a payment in September 2023. (*Id.* ¶ 45; *see* Compl.*,* Ex. Z at 3, ECF No. 1-30.) Following this payment, DLJ agreed to discontinue the foreclosure proceeding it commenced in Queens County Supreme Court. (*Id.* ¶ 46.) However, in mid-September, Defendant Selene called Plaintiffs to advise them that their September installment had not been processed. (*Id.* ¶ 47(b).) In addition, and notwithstanding Plaintiffs October 2023 and November 2023 payments, Defendant Selene repeatedly sent Plaintiffs statements indicating that Plaintiffs were delinquent. (*See id.* ¶ 47(a)-(k).)[3] On or about December 18, 2023, Defendant Selene sent Plaintiffs default notices. (*Id.* ¶ 47(f).) And, on or about January 18, 2024, Defendant Selene sent Plaintiffs a "New York 90 Day Notice" foreclosure letter. (*Id.* ¶ 47(j).)

---

[3] The Trial Modification Plan provided that, if Plaintiffs made the requisite payments on May 1, June 1, and July 1, 2023, Defendant Selene would offer a "a permanent modification of [Plaintiffs'] [a]ccount" whereby the first modification payment, totaling $2,149.70, would be due August 1, 2023. (Compl., Ex. N at 7.) Defendant Selene's February 16, 2024 letter indicates that Plaintiffs' August 2023 payment was reversed by Plaintiff Duprey's financial institution and no other payment was made that month. (*See* Compl., Ex. Z at 3; *see also id.* ¶ 42.) It further indicated that a payment was applied to Plaintiffs' August 2023 installment, as opposed to their September 2023 installment, after Plaintiff Duprey spoke with a representative of Defendant Selene and made a payment over the telephone on September 5, 2023. (Compl., Ex. Z at 4.) Thereafter, Plaintiffs made payments on October 2 and November 10, 2023, which were applied to the monthly installments due September 1 and October 1, 2023, respectively. (*Id.*) Defendant Selene received no further payments. (*see id.* ("[Defendant] Selene has received no further payments since November 10, 2023. [Plaintiffs'] [a]ccount is currently contractually due for November 1, 2023 monthly installment.")

Plaintiffs claim that Defendant Selene continued to misreport their payments despite the fact that Plaintiffs alerted Defendant Selene to the purported errors on multiple occasions—both orally and in writing.  (*Id.* ¶¶ 48, 50.)  In addition, the New York Department of Financial Services ("DFS") submitted three Qualified Written Requests ("QWR") to Defendant Selene on behalf of Plaintiffs on August 11, 2023, January 17, 2024, and February 26, 2024, regarding the purported errors.  (*Id.* ¶¶ 47(a), 47(h), 47(k).)  Defendant Selene responded to these QWRs with purportedly erroneous information.  (*Id.*)  To date, Defendant Selene have yet to correct these purported errors.  (*Id.* ¶ 50.)

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of establishing beyond a preponderance of the evidence that subject-matter jurisdiction exists.  *Id.*  "In reviewing a Rule 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[].'" *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (alterations in original) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)).  Further, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

## DISCUSSION

### I. Plaintiffs Lack Standing to Assert FCRA Claims against Defendant DLJ

Article III of the United States Constitution limits the jurisdiction of federal courts to "actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citations omitted). "To ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit." *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 92 (2d Cir. 2018) (quoting *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012)). To this end, plaintiffs satisfy the standing requirement by establishing that they "(1) suffered an injury[-]in[-]fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted). An injury-in-fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (internal quotations omitted). Notably, and as is relevant here, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

According to the complaint, Defendants violated the FCRA by failing to conduct any investigation following Plaintiffs' notice of dispute, and continuously and deliberately reporting inaccurate information to credit bureaus without providing notice that Plaintiffs disputed such information. (Compl. ¶¶ 124-33.)[4] In seeking dismissal of Plaintiff's claims against it,

---

[4] The Court construes Plaintiffs' FCRA claim as alleging a violation of 15 U.S.C. § 1681s-2(b). (*See* Compl. ¶¶ 127, 132.) While Defendant DLJ is correct that Plaintiffs did not explicitly cite 15 U.S.C. § 1681s-2(b) in their complaint, it appears their failure to do so is the product of a typo, given that Plaintiffs reference the language of 15 U.S.C. § 1681s-2(b) followed by a citation to a nonexistent section. *See id.* (alleging Defendants reported inaccurate information without providing notice that Plaintiffs disputed such information in violation of "15 U.S.C. § 1681s-2(3)"—a nonexistent section).

6

Defendant DLJ argues that Plaintiffs failed to allege any specific and concrete injury suffered as a result of these alleged violations. (Defs.' Mem L. Mot. Dismiss ("Defs.' Mem.") at 7-8, ECF No. 19-1.) That is, according to Defendant DLJ, Plaintiffs do not allege a concrete injury resulting from Defendant DLJ's purported FCRA violations, and therefore, they lack Article III standing to pursue their FCRA claims against Defendants. The Court agrees.

"In the FCRA context, the Supreme Court [has] made clear that 'a bare procedural violation, divorced from any concrete harm' fails to satisfy the injury-in-fact requirement of Article III." *Zlotnick v. Equifax Info. Servs.*, LLC, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) (quoting *Spokeo*, 578 U.S. at 341). In *TransUnion*, the Supreme Court further explained that "[f]or standing purposes, . . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." 594 U.S. at 426-27. The Second Circuit has interpreted *TransUnion* as concluding "that in suits for damages[,] plaintiffs cannot establish Article III standing by relying entirely on a statutory violation or risk of future harm." *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021).

"District courts following *TransUnion* and *Maddox* assessing claims brought pursuant to both the FCRA and the Fair Debt Collection Practices Act ("FDCPA"), an analogous statute, have uniformly held that absent specific allegations of reputational or monetary harm, plaintiffs lack constitutional standing." *Spira v. Trans Union, LLC*, No. 21-CV-2367 (KMK), 2022 WL 2819469, at *4 (S.D.N.Y. July 19, 2022) (internal quotation marks and citations omitted) (collecting cases). Of course, at the motion to the dismiss stage, "standing allegations need not be crafted with precise detail, nor must the plaintiff[s] prove [their] allegations of injury." *Baur*

7

*v. Veneman*, 352 F.3d 625, 631 (2d Cir. 2003).  However, Plaintiffs must still allege facts that "affirmatively and plausibly suggest that [they] ha[ve] standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

Here, the only harm alleged with respect to Defendants purported FCRA violations is "damage [to] Plaintiffs' credit." (Compl. ¶ 49.)[5]  Further, in requesting relief pursuant to their FCRA claims, Plaintiffs merely state, "[a]s a result of Defendants' . . . conduct in violation of the FCRA, Plaintiffs have been damaged" and/or are entitled to actual, statutory, and punitive damages, and recovery of attorneys' fees and costs incurred in connection with this action." (Compl. ¶¶ 128, 133.)  Simply put, these assertions are insufficient to confer Plaintiffs with standing to pursue their FCRA claims.

"A lowered credit score in and of itself is not a concrete harm." *Zlotnick*, 583 F. Supp. 3d at 392 (citing *Maddox*, 19 F.4th at 65).  Alleged harms of injury to credit worthiness and increased difficulty obtaining credit are also insufficient to establish standing without allegations of "any specific lost credit opportunity." *Gross v. TransUnion, LLC*, 607 F. Supp. 3d 269, 273 (E.D.N.Y. 2022); *cf. Demarattes v. Enhanced Recovery Co.*, No. 20-cv-4722, 2022 WL 4121217, at *4 (E.D.N.Y. Sept. 9, 2022) (concluding that plaintiffs had standing because they specifically alleged that one plaintiff was denied two loans because of an inaccurate credit

---

[5] In their memorandum of law in opposition to Defendant DLJ's motion to dismiss, Plaintiffs, for the first time, argue that Defendant DLJ's inaccurate reporting caused "damages including but not limited to loss and reduction of credit, damage to their credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery, emotional distress, and other actual damages." (Pls.' Mem. L. Opp'n DLJ's Mot. ("Pls.' Opp'n") at 20, ECF No. 25.)  However, the Court will not consider these assertions because "facts not alleged in [Plaintiffs'] [c]omplaint or its exhibits . . . are not appropriate for consideration on a motion to dismiss." *Jones v. New Penn Fin., LLC*, No. 19-CV-1493 (ENV)(PK), 2020 WL 8771252, at *2 (E.D.N.Y. Nov. 13, 2020), *report and recommendation adopted in its entirety*, No. 19CV1493ENVPK, 2021 WL 405888 (E.D.N.Y. Feb. 5, 2021); *see also Craig v. Bank of New York Mellon Corp.*, No. 10-CV-4438 SLT RML, 2012 WL 1004870, at *4 (E.D.N.Y. Mar. 23, 2012) (explaining that a court is required to look only at the facts alleged in a complaint or the exhibits attached thereto).

reporting). Further, a risk "not alleged to have materialized[] cannot form the basis of Article III standing." *Maddox*, 19 F.4th at 65. As such, Plaintiffs' contention that Defendants purported FCRA violations caused "damage [to] Plaintiffs' credit" is insufficient to satisfy the injury-in-fact requirement. (Compl. ¶ 49.) And, surely, Plaintiffs bare-bones assertions that they have been "damaged" and are entitled to damages, (*id* ¶¶128, 133), equate to conjecture insufficient to satisfy this requirement. *See Ashcroft*, 556 U.S. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."); *TransUnion LLC*, 594 U.S. at 427-28 (holding that "[a]n uninjured plaintiff . . . merely seeking to ensure a defendant's 'compliance with regulatory law' (and, of course, to obtain some money via statutory damages)" lacks Article III standing). Plaintiffs' FCRA claims are dismissed against Defendants with prejudice.

## II.     Plaintiffs' Request for Leave to Amend is Denied

On September 11, 2024, the Court held a pre-motion conference in anticipation of Defendant DLJ's motion to dismiss. (*See* Minute Entry and Order, dated Sept. 11, 2024).) Following the pre-motion conference, the Court indicated that, should Plaintiffs wish to amend their complaint, they must file an amended complaint on or before September 25, 2024. (*Id.*) On September 23, 2024, Plaintiffs filed a request for an extension to file their amended complaint, to which the Court did not immediately respond. (*See* Ltr. Mot., ECF No. 18.) Plaintiffs contend that, on September 25, 2024—the date their amended complaint was due— their counsel contacted the Court's Chambers regarding their pending extension request and was allegedly told by an unnamed person that an order granting the extension would be entered that day. (Pls.' Opp'n. at 9). They further assert that on October 1, 2024, Plaintiffs' counsel's office again contacted the Court's Chambers and that an unnamed individual returned this call the next

9

day advising that an order addressing the extension request would be forthcoming.  (*Id.*)  On October 2, 2024, the Court denied Plaintiffs' request for an extension and set a briefing schedule for Defendant DLJ's instant motion to dismiss.  (Order, dated Oct. 2, 2024.)

  As a threshold matter, it is not this Court's practice to conduct its business ex parte by phone.  Further, this Court does not contact individual litigants to discuss any motion.  The Court finds it telling that Plaintiffs fail to identify anyone in Chambers by name with whom they spoke.  It is also noteworthy that Plaintiffs failed to raise this purported conversation at the time their extension request was denied.  Instead, Plaintiffs waited two months after the denial of its extension request to even mention this purported conversation.

  In any event, pursuant to Rule 15 of the Federal Rules of Civil Procedure, "[t]he [C]ourt should freely give leave when justice so requires."  Fed. R. Civ. Proc. 15(a)(2).  Ultimately, however, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Further, as explained in *Parker v. Columbia Pictures Indus.*, Rule 16 of the Federal Rules of Civil Procedure is also relevant to this analysis due to it governing the amendment of pleadings.  *See* 204 F.3d 326, 339-340 (2d Cir. 2000) (discussing the applicability of "Rule 16(b) to motions to amend the pleadings); Fed. R. Civ. Proc. 16.  Under Rule 16(b)(4) of the Federal Rules of Civil Procedure, the Court is instructed that a court-ordered schedule can only be modified for "good cause" and with the judge's consent.  Fed. R. Civ. Proc. 16(b)(4).  In doing so, the Second Circuit held that it was joining several other circuit courts in holding that, "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after [a] deadline [is] set in [a] scheduling order where the moving party has failed to establish good cause."  *Parker*, 204 F.3d at 340.  Good cause has not been shown by Plaintiffs.

10

Here, Plaintiffs explain that it sought an extension of time to file an amended complaint "in order to address standing issues raised at the last hearing, and to provide the Court with more concrete and particularized damages regarding the claims outlined in the complaint." (Pls.' Opp'n at 9.) But, Plaintiffs were well aware of the standing issues raised by Defendants since May 17, 2024—more than five months from the date Plaintiffs' amended complaint was due. (*See* Defs.' Ltr. Mot. at 3, ECF No. 12.) Further, and as explained above, Plaintiffs were neither required to formulate their damages "with precise detail" nor to even prove their allegations of injury. *Baur*, 352 F.3d at 631. Yet, in Plaintiffs' letter request for an extension, they note that they were waiting for an "initial report and analysis" from an expert they retained. (Pls.' Ltr. Mot. at 1, ECF No. 18.) The notion that Plaintiffs failed to meet their deadline to file an amended complaint due to them waiting to receive an expert report cannot satisfy the good cause standard because such report was premature and unnecessary. Having determined that the rationale provided by Plaintiffs with respect to why they sought to extend the deadline for the filing of their amended complaint fails to establish good cause, the Court denies Plaintiffs' request for leave to amend. This conclusion is further supported by the Court's belief that the recitation of events Plaintiffs purport is made in bad faith. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that bad faith is a proper reason to deny a request for leave to amend made pursuant to Rule 15(a)).

11

## CONCLUSION

For the foregoing reasons, Defendant DLJ's motion to dismiss the complaint as against it is GRANTED. [6] Further, Plaintiffs' FCRA claim is dismissed with prejudice as to all Defendants.

                                                          SO ORDERED.

Dated: Brooklyn, New York                  /s/ LDH
       September 30, 2025                       L<small>A</small>SHANN D<small>E</small>ARCY HALL
                                                  United States District Judge

---

[6] Having dismissed the federal claims brought against Defendant DLJ in this action, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against this Defendant. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3)). Accordingly, because the Court grant's Defendant DLJ's motion to dismiss, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendant DLJ's motion to dismiss, pursuant to Rule 12(b)(6), is DENIED as moot.